UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| JESSE RONDALE BAILEY, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos: 3:06-CR-145-TAV-HBG |
| | ) | 3:10-CV-549-TAV-HBG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Jesse Rondale Bailey ("petitioner"). The government has filed its response to the motion and petitioner has filed a reply. Petitioner has also filed a motion to expand the record to include affidavits. The motion to expand [Doc. 117[1]] will be **GRANTED**. For the following reasons, the § 2255 motion to vacate will be **DENIED** and this action will be **DISMISSED**.

**I.  Standard of Review**

This Court must vacate and set aside petitioner's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."

---

[1]All citations to the record refer to the docket sheet in petitioner's criminal case.

*United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II.     Factual Background

Petitioner was convicted by a jury of the following: conspiracy to distribute and possession with intent to distribute cocaine hydrochloride and cocaine base, in violation of 21 U.S.C. § 846; distribution of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1); and three counts of distribution of a mixture and substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). [Doc. 51, Verdict]. The witnesses against petitioner included his supplier, Shermond Alsup; a buyer, Eric Gwinn; the officers who supervised the controlled buys, DEA Special Agent Todd Lee and Knoxville Police Officer Jim Marcum; DEA chemist Elizabeth Adkins; and DEA Special Agent David Lewis, who offered expert testimony.

After he was found guilty by a jury, petitioner filed a motion for judgment of acquittal or, in the alternative, for a new trial. [Doc. 76, Motion]. Although the motion was untimely, the Honorable Thomas W. Phillips, the district judge presiding over the case, considered the

2

motion on its merits and then denied the motion. [Doc. 79, Order]. Judge Phillips subsequently sentenced petitioner as a career offender, by judgment entered November 25, 2008, to concurrent terms of imprisonment of 360 months, for a total effective sentence of 360 months, which was at the bottom of his advisory guideline sentencing range. [Doc. 90, Judgment].

Petitioner's conviction was affirmed on direct appeal. *United States v. Jesse Rondale Bailey*, 367 F. App'x 647 (6th Cir. March 4, 2010) [Doc. 101, Order], *cert. denied*, 130 S. Ct. 3531 (2010). Because petitioner's arguments on appeal were the same arguments raised in his motion for judgment of acquittal or for new trial, the Sixth Circuit affirmed without the issuance of a full opinion based upon the district court's denial of the motion. *Id*. In support of his § 2255 motion, petitioner alleges he received ineffective assistance of counsel.

## III. Discussion

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970),

3

petitioner must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id.* at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The issue is whether counsel's performance "was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*). Because he is seeking relief under § 2255, petitioner bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Petitioner alleges numerous instances of ineffective assistance of counsel, each of which the Court will consider in turn.

### A. Alleged Failure to Challenge the Jury Selection Process

Petitioner is African-American. He alleges that the jury pool from which his petit jury was drawn did not include a single African-American. Petitioner alleges that counsel failed to object to the jury selection procedure or otherwise preserve the issue for appeal. This contention is contradicted in the record. On the first day of trial, defense counsel objected to the jury as a whole because there were no African-Americans in the venire; the Court

4

overruled the objection. [Doc. 68, Trial Transcript, Vol. I, pp. 36-37]. In any event, the argument lacks merit.

Pursuant to the Sixth Amendment, a criminal defendant is entitled to a jury venire, from which the petit jury is drawn, that represents a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1975). However, there is no requirement that the jury panel must accurately reflect the proportionate strength of every identifiable group:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Id*. at 538.

The Supreme Court has held that, in order to establish a Sixth Amendment violation, a defendant must establish the following:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Each of these three elements "must be established before the government is required to justify an infringing selection procedure." *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998).

African-Americans have been recognized as a distinctive group, *see, e.g., Lockhart v. McCree*, 476 U.S. 162, 175 (1986), and thus petitioner could establish the first requirement. He has failed to put forth any facts, however, which would establish that the jury venire, from which his petit jury was chosen, did not represent a fair cross section of the community nor has he shown that the jury selection procedure excluded distinctive groups or was not racially neutral.

The Jury Plan for the Eastern District of Tennessee, which was in place at the time the venire was selected for petitioner's trial, prohibited discrimination in the jury selection process and established race-neutral procedures for the selection of jurors. A similar challenge to this district's jury selection process was considered and rejected by the Sixth Circuit. *See United States v. Clark*, 112 F. App'x 481, 486 (6th Cir. October 13, 2004), *vacated and remanded on other grounds*, 545 U.S. 1101 (2005). Accordingly, petitioner has failed to demonstrate that African-Americans are systemically excluded from jury service in this district and his claim of ineffective assistance of counsel in this regard lacks merit.

**B.     Alleged Failure to Challenge Wiretap Evidence**

Petitioner alleges that the conspiracy case against him began with a Title III wiretap investigation of Shermond Alsup which ultimately connected petitioner to drug trafficking and that counsel should have objected to the use of the Title III wiretap evidence. Petitioner further claims that, although none of the wiretaps contained his voice, Special Agent Lee testified that petitioner was connected to Alsup through pen registers which showed his telephone number contacting that of Alsup.

6

As petitioner admits, no evidence from a Title III wiretap was used against him at trial. With respect to the pen register, Special Agent Lee was asked how he learned of petitioner's involvement in Mr. Alsup's conspiracy and he started to answer "[t]hrough pen register data of Mr. Alsup's-;" defense counsel objected based on hearsay, and there was no further mention of pen register data by Special Agent Lee. [Doc. 69, Trial Transcript, Vol. II, pp. 70-72]. Petitioner was not prejudiced by this brief mention of a pen register.

Petitioner also claims that, although the controlled buys involving Mr. Gwinn were captured on tape recordings, counsel failed to object to the recordings on the basis that Mr. Gwinn did not consent to them. Mr. Gwinn agreed to cooperate with the authorities after his arrest for possession of marijuana. [Doc. 68, Trial Transcript, Vol. I, pp. 125-127]. Part of that cooperation was to make controlled buys of cocaine from petitioner which were "taped or recorded." [*Id*. at 132]. Mr. Gwinn made four such controlled buys. [*Id*. at 133]. Mr. Gwinn knew the buys would be recorded and his consent to such recording is thus presumed. Defense counsel had no reason to object to the recordings based upon lack of consent.

Petitioner further alleges that counsel should have challenged the government's probable cause for a wiretap based upon an insufficient affidavit. As petitioner has admitted, however, his voice was not caught on any of the wiretaps and thus there would have been no basis for counsel to have challenged the wiretaps.

### C. Alleged Failure to Address Publicity

Petitioner alleges that counsel failed to take remedial action with respect to publicity both before and during trial and thus deprived him of a fair trial. According to petitioner,

7

there is a reasonable likelihood that the jury was exposed to media coverage of his prior murder conviction and gang activity, and counsel should have sought a change of venue or submitted special voir dire questions.

Under the U.S. Constitution, "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961). However, jurors are not required to "totally ignorant of the cats and issues involved." *Id*. Thus, the mere presence of pretrial publicity does not require a change of venue.

> A juror's exposure to news accounts about the crime charged, standing alone, does not presumptively establish that the defendant was denied a fair trial. Fairness requires that the defendant be tried by an impartial, indifferent jury. The test for change of venue due to pretrial publicity does not depend on the amount of media coverage but rather whether "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

*United States v. Chambers*, 944 F.2d 1253, 1262 (6th Cir. 1991) (quoting *Murphy v. Florida*, 421 U.S. 794, 800 (1975)) (citations omitted). In this case, however, there is nothing in the record to suggest that the jurors were exposed to publicity either before or during the trial.

At the beginning of voir dire, Judge Phillips asked the prospective jurors whether any of them had "heard or read anything about this case other than what we have discussed just a moment ago? [Doc. 68, Trial Transcript, Vol. I, p. 8]. There was no affirmative response to the question. [*Id*.].

8

After the jurors were selected, Judge Phillips instructed them to "not read or listen to anything touching on this case in any way." [*Id*. at 43]. At the end of the first day of a two-day trial, Judge Phillips instructed the jury as follows:

> We have been very fortunate today to have a reporter for the Knoxville News Sentinel visiting with us. I am sure that tomorrow she will write an article about what has transpired today. Unfortunately, you cannot read it. You must not read anything about this case. If you would want to read it later, have your spouse save the newspaper for you and tomorrow - excuse me- after this case is over, if it's over tomorrow, that's fine.
>
> But once this case is over, you can certainly read about the case. If there is anything in the news about the case on television or on the radio, simply do not listen to it and do not view it. We want you to only hear evidence that is presented here in this courtroom.

[*Id*. at 198-199].

The following day, after the jurors had returned their verdict, Judge Phillips asked them the following question:

> Ladies and gentlemen of the jury, I want to ask you another question, if you would, please. I told you last night not to read the article in today's News Sentinel. I need to make sure that you did not do that. Would you so indicate that you did not read the article in today's paper by raising your right hand at this time?

[Doc. 69, Trial Transcript, Vol. II, p. 157]. Judge Phillips then noted for the record that "each member of the panel raised his or her right hand." [*Id*. at 157-158]. In light of the foregoing, counsel's alleged failure to take remedial action did not constitute ineffective assistance.

### D. Alleged Failure to Object to Prosecutorial Misconduct

Petitioner alleges that the prosecutor repeatedly used leading questions on direct examination of his witnesses and that defense counsel failed to object. Petitioner raised this issue of prosecutorial misconduct in his motion for judgment of acquittal or for new trial, which was denied, and the Sixth Circuit affirmed. Petitioner cannot use a § 2255 proceeding to relitigate issues decided adversely to him on direct appeal absent extraordinary circumstances, which are not present here. *See, e.g., Jones v. United* States, 178 F.3d 790, 796 (6th Cir. 1999) ("It is ... well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."). This claim of ineffective assistance lacks merit.

### E. Alleged Failure to Properly Cross-Examine Mr. Alsup

Petitioner alleges that counsel failed to properly cross-examine Mr. Alsup as to his sentence exposure in light of his cooperation. According to petitioner, the prosecutor created the false impression that the Court would have the final say as to Mr. Alsup's sentence. Petitioner contends that defense counsel should have elicited evidence from Mr. Alsup that he was facing a mandatory term of life imprisonment based upon his prior drug convictions and that the only way the sentence could be reduced was by a motion for downward departure from the U.S. Attorney's office.

Mr. Alsup testified on direct examination that he was facing mandatory life in prison, that he pleaded guilty and agreed to cooperate with the government in order to receive a

10

lesser sentence, but no promises had been made as to what his sentence would be. [Doc. 69, Trial Transcript, Vol. II, pp. 24-31]. He reiterated on cross-examination that under his plea agreement the only way to keep from doing life in prison was to cooperate with the government. [*Id*. at 60-61]. The jury was aware that Mr. Alsup was testifying against petitioner in order to receive a lesser sentence and, in fact, Judge Phillips instructed the jury to "consider Mr. Alsup's testimony with more caution than the testimony of other witnesses." [*Id*. p. 142]. This claim of ineffective assistance lacks merit.

F.     **Alleged Failure to Investigate and Prepare for Government Witnesses**

Petitioner alleges that defense counsel failed to effectively cross-examine the government's two cooperating witnesses, Mr. Gwinn and Mr. Alsup. Petitioner contends that counsel should have questioned Mr. Gwinn about the specifics of his cocaine purchases and should have questioned Mr. Alsup about the fact that their telephone conversations were not caught on the wiretaps.

Prior to the controlled buys, Mr. Gwinn on his own made an initial unmonitored purchase of cocaine from petitioner, which he turned over to the authorities. [Doc. 68, Trial Transcript, Vol. I, pp. 129-132]. It was at that time the government asked Mr. Gwinn to make controlled, monitored buys from petitioner. [*Id*. at 132-133]. Contrary to petitioner's assertion, on cross-examination defense counsel questioned Mr. Gwinn extensively about the unmonitored drug buy in an attempt to show it did not happen in the manner that Mr. Gwinn described. [*Id*. at 168-175]. As for the controlled buys, they were recorded and its not clear

11

how extensive cross-examination about them could do other than underscore petitioner's participation in them.

With respect to Mr. Alsup, he admitted on cross-examination that, of the thousands of taped telephone calls that were part of the government's case against him, none involved petitioner. [Doc. 69, Trial Transcript, Vol. II, pp. 57-58]. He also admitted that he had lied to judges in the past. [*Id*. at 59-60]. Coupled with his admission that he was facing life in prison unless he cooperated with the government, defense counsel's questioning suggested that Mr. Alsup was again lying to save himself. Based upon the foregoing, the claims of ineffective assistance with respect to the cross-examination of the government witnesses lack merit.

### G. Alleged Failure to Present a Defense

Petitioner alleges that counsel failed to prepare, interview, and call witnesses favorable to his defense. According to petitioner, his uncle would have been an alibi witness on the date of the first unmonitored buy. He also claims that counsel should have investigated the locations of the controlled buys to determine whether private security cameras captured footage which would have been favorable to the defense. The controlled buys clearly demonstrated petitioner's involvement in drug trafficking and thus any alibi testimony from petitioner's uncle would have been irrelevant.

With respect to the claim that counsel should have investigated the locations of the controlled buys, petitioner does not indicate what kind of favorable evidence would have been discovered. A § 2255 movant has the burden of proving the substance of his allegations

12

by a preponderance of the evidence and a district court is not required to hold an evidentiary hearing on the basis of conclusory allegations. *See, e.g., Ashley v. United States*, 17 F. App'x 306, 308 (6th Cir. 2001); *Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970); *United States v. Orlando*, 327 F.2d 185, 188 (6th Cir. 1964); *Malone v. United States*, 299 F.2d 254, 255 (6th Cir. 1962). This claim of ineffective assistance lacks merit.

**H.    Alleged Failure to Object to Evidence of a Pen Register**

Petitioner alleges that counsel should have objected to Special Agent Lee's testimony when he mentioned the pen register and should have moved to strike his testimony. As noted earlier, Special Agent Lee was asked how he learned of petitioner's involvement in Mr. Alsup's conspiracy and he started to answer "[t]hrough pen register data of Mr. Alsup's-;" defense counsel objected based on hearsay, and there was no further mention of pen register data by Special Agent Lee. [Doc. 69, Trial Transcript, Vol. II, pp. 70-72]. Petitioner was not prejudiced by this brief mention of a pen register and this claim of ineffective assistance lacks merit.

**I.    Alleged Failure to Object to Prosecutorial Misconduct in Closing Statements**

Petitioner alleges that counsel should have objected to the following remarks by the prosecutor during closing arguments: "I would submit Mr. Gwinn was a very credible witness ..." [Doc. 69, Trial Transcript, Vol. II, p. 116] and "Agent Lee was right when he said this is an airtight case, because it is." [*Id*. at 96].

13

It is well established that a prosecutor should not personally vouch for the credibility of his witnesses.

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. Generally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted). However, a prosecutor's "use of the words 'I submit' are not the equivalent of expressing a personal opinion." *United States v. Stulga*, 584 F.2d 142, 147 (6th Cir. 1978); *see also United States v. Legette-Bey*, 147 F. App'x 474, 483 (6th Cir. 2005) ("The mere addition of 'I submit' does not render a statement automatically improper, since such a statement is not the equivalent of expressing a personal opinion.").

The prosecutor's statement regarding Mr. Gwinn was thus not improper vouching. As to his statement that it was an airtight case, the prosecutor was not attempting to vouch for Agent Lee's credibility but rather was commenting on the overwhelming evidence against petitioner. *See United States v. Drake*, 885 F.3d 323, 324 (6th Cir. 1989) (a prosecutor may "summarize the evidence and comment upon both its quantitative and qualitative significance"). Because neither of these statements were improper, counsel was not ineffective in failing to object to them. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

14

### J. Alleged Failure as to Jury Instructions

Petitioner alleges that counsel failed to request instructions on "buyer-seller" and "multiple conspiracies" to negate evidence of a conspiracy involving petitioner and Mr. Alsup. The evidence at trial demonstrated a long period of trafficking in large quantities of drugs, which was more than a buyer-seller relationship between petitioner and Mr. Alsup. Petitioner was not entitled to a buyer-seller instruction or a multiple conspiracies instruction, and counsel was not ineffective in failing to request those instructions.

### K. Alleged Failure to Preserve Pro Se Pleadings for Appeal

Petitioner alleges that counsel failed to preserve for appellate review the various *pro se* post-verdict pleadings that petitioner filed with the Court, specifically motions for judgment of acquittal and for a new trial. While neither petitioner's trial attorney or the second attorney appointed to represent him filed these motions, the third attorney appointed to represent petitioner did file a motion for judgment of acquittal or, in the alternative, for a new trial. As previously noted, the Court considered and rejected the motion on the merits and the Sixth Circuit affirmed. Because petitioner suffered no prejudice from his attorneys' alleged failing, this claim of ineffective assistance lacks merit.

### L. Alleged Abandonment

Petitioner alleges that trial counsel abandoned him after the jury verdict by failing to file post-trial motions. This is simply a variation on petitioner's next-preceding claim, which lacks merit for the same reasons.

15

## M. Alleged Failure to Properly Object to the Presentence Report.

Petitioner claims that his attorney did absolutely nothing to advocate for him at sentencing. He specifically alleges that counsel should have objected to career offender status, moved for a downward departure from the guideline range, objected to prior criminal convictions, and argued for a variance from the guideline range. Petitioner also alleges that counsel failed to meet with him to review the presentence report. These claims are contradicted in the record.

Counsel filed a Sentencing Memorandum, in which he argued that career offender status for petitioner was not mandatory under the guidelines; that petitioner was entitled to a variance from the guideline range; that certain of petitioner's prior convictions and his pending charges, as well as his alleged gang affiliation, should not be considered in determining his sentence; and that petitioner was entitled to a departure in light of changes to the crack guidelines. [Doc. 81, Sentencing Memorandum, pp. 7-12]. At the beginning of the sentencing hearing, with respect to the presentence report, counsel stated that he and petitioner "had gone through it in visits at the Blount County Jail." [Doc. 97, Sentencing Transcript, p. 5]. During the sentencing hearing, counsel forcefully argued against petitioner being sentenced as a career offender and for a sentence below his guideline range. [*Id*. at 8-13, 17-19].

Judge Phillips found that petitioner was properly classified as a career offender. [*Id.* at 20-21]. As a result of counsel's arguments, however, he agreed not to consider petitioner's juvenile record, his pending charges, or his gang affiliation in determining his sentence. [*Id.* at 22-23]. Petitioner's claim of ineffective assistance during sentencing lacks merit.

### N.     Alleged Ineffective Assistance of Appellate Counsel

Petitioner alleges that appellate counsel failed to raise on appeal meritorious issues, such as unconstitutional jury selection process, the prosecutor's use of leading questions, the unreasonableness of his sentence, and his status as a career offender. Petitioner also alleges that appellate counsel should have argued ineffective assistance on the part of trial counsel.

A defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). However, a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* Thus, appellate counsel's decision as to what issues should be raised on appeal cannot generally constitute ineffective assistance of counsel. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. at 751); *see also McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level

17

of a Sixth Amendment violation."); *Wright v. United States*, 182 F.3d 458, 466 (6th Cir. 1999) ("Appellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal.").

Appellate counsel raised on appeal the claims raised in the motion for acquittal or for new trial. This Court cannot say that appellate counsel erred in his decision to pursue these issues and not the issues raised by petitioner. "A brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. at 753. In addition, the claims which petitioner says appellate counsel should have raised are also the claims that petitioner says trial counsel was ineffective for not pursuing. The Court has determined that those claims lack merit and thus appellate counsel was not ineffective in failing to raise them. *See Mathews v. United States*, 11 F.3d 583, 585 (6th Cir. 1993) (an attorney is not required to raise meritless issues on appeal). The Court having determined that trial counsel did not render ineffective assistance, appellate counsel did not err in failing to pursue that claim on appeal.

## IV. Conclusion

Petitioner has failed to demonstrate that he received ineffective assistance of counsel under the standard set forth in *Strickland*. He is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules

18

of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE